1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

KATHLEEN D. GATES,

CASE NO. 13cv2611-MMA (DHB)

11

Plaintiff,

12

vs.

13

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**

14

[Doc. No. 21]

15

MCT GROUP, INC., et al,

16

Defendants.

**DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

17

[Doc. No. 35]

18

Plaintiff Kathleen D. Gates brings this fair debt collection action against

19

Defendants MCT Group, Inc. and the Law Offices of Peter W. Singer.  The parties

20

have filed motions for summary judgment.  *See* Doc. Nos. 21, 35.  For the reasons

21

set forth below, the Court **GRANTS IN PART** and **DENIES IN PART**

22

Defendants' motion and **DENIES** Plaintiff's motion.

23

<u>BACKGROUND</u>

24

The following facts are not reasonably in dispute.[1]  Plaintiff Kathleen Gates

25

incurred a debt to San Diego County Credit Union based on the use of a personal

26

credit card.  Plaintiff fell behind on the debt payments.  The credit union assigned

27

28

[1] These facts are taken from the parties' statements of undisputed facts and responses thereto, together with pertinent cited exhibits and relevant deposition testimony.

the debt to Defendant MCT Group, Inc. ("MCT") for collection.  MCT retained Defendant Law Offices of Peter W. Singer ("Singer") to file suit in state court against Plaintiff on MCT's behalf.  Ultimately, the state court entered a default judgment against Plaintiff in favor of MCT and a writ of execution was issued.

Plaintiff receives benefits from the Social Security Administration via direct deposit into a checking account with Wells Fargo Bank.  Plaintiff intermittently receives money from other sources, including her son and daughter-in-law, which she deposits into her checking account.  Plaintiff also maintains a savings account with Wells Fargo.  Plaintiff transfers a portion of the funds in her checking account to her savings account through a recurring transfer every month.

On July 16, 2013, Defendants authorized the San Diego County Sheriff to serve a notice of bank levy on Wells Fargo, with the following instructions: "Please levy on all sums on deposit for the judgment debtor(s).  Do not restrict to accounts indentified [sic] below.  Please hold writ for full 6 months term."  *See* Plaintiff's Exhibits in Support of Motion for Partial Summary Judgment, Ex. C.  On July 24, 2013, the Sheriff served Wells Fargo with the notice of bank levy.  *See id.*, Ex. J.  On that same date, Wells Fargo deducted $201.67 from Plaintiff's savings account, consisting of a $125 legal order processing fee charged by Wells Fargo and $76.67 withdrawn as levied funds.[2]  *See* Defendants' Exhibits In Support of Motion for Summary Judgment, Ex. D.  Wells Fargo did not deduct any funds from Plaintiff's checking account.

On or about August 1, 2013, Plaintiff returned a Claim of Exemption to the levying officer, seeking exemption of the full amount of the levied funds as Social

---

[2] Plaintiff repeatedly represents to the Court throughout her pleadings that the amount levied from her account was $201.76.  *See, e.g.,* Doc. No. 35-1 at 4; Doc. No. 38 at 10; Doc. No. 47 at 19, 14; Doc. No. 49 at 2.  This is an inaccurate representation.  It is undisputed that the levying officer only received $76.76 in levied funds from the account.  *See, e.g.,* Plaintiff's Exhibits In Support of Motion for Partial Summary Judgment, Ex. J. The remainder of the $201.76 – the $125 legal order processing fee – was charged, withdrawn, and retained by Wells Fargo.  Pursuant to state law, Wells Fargo was authorized to withdraw its "standard fee or charge for processing the levy."  *See* Cal. Code. Civ. Pro. § 700.140.

Security benefits pursuant to 42 U.S.C. § 407.  *See* Plaintiff's Deposition, Ex. 3.
Defendants did not oppose the Claim of Exemption.  On September 6, 2013, the
levying officer returned the $76.67 in levied funds to Plaintiff.  *Id.*  Neither MCT
nor Singer ever received any money as a result of the levy.

On October 29, 2013, Plaintiff commenced this action against MCT and
Singer.  Plaintiff's amended complaint, filed on December 16, 2013, is the operative
pleading.  *See* Doc. No. 4.  The Court previously dismissed several causes of action
pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Doc. No. 12.  Plaintiff's
remaining claims arise under the Fair Debt Collection Practices Act ("FDCPA"), 15
U.S.C. §§ 1692, *et seq*., specifically: (1) Section 1692e(5) (MCT and Singer
threatened to take an action that cannot legally be taken or that is not intended to be
taken); (2) Section 1692f (MCT and Singer used an unfair or unconscionable means
of collecting a debt); (3) Section 1692e(10) (MCT made use of a false representation
or deceptive means to collect or attempt to collect a debt).  Plaintiff also has a
companion state law claim under the Rosenthal Fair Debt Collection Practices Act
("Rosenthal Act"), California Civil Code §§ 1788-1788.32.[3]  *See Riggs v. Prober &
Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) ("The Rosenthal Act mimics or
incorporates by reference the FDCPA's requirements, including [§ 1692e], and
makes available the FDCPA's remedies for violations.") (citing Cal. Civ. Code §
1788.17).

Defendants move for summary judgment as to Plaintiff's FDCPA claims and
request that the Court decline to exercise supplemental jurisdiction over Plaintiff's
Rosenthal Act claim.  Plaintiff moves for partial summary judgment as to the issue
of Defendants' liability on all claims.

---

[3] In her amended complaint, Plaintiff requests an award of treble damages
pursuant to California Civil Code § 3345, alleging that Defendants knew or should have
known that their conduct was directed toward a senior citizen.  *See* Doc. No. 4.
However, Plaintiff now stipulates that she was not a "senior citizen" at the time of the
events in question and no longer asserts a claim for treble damages under California
Civil Code § 3345.  *See* Plaintiff's Opposition to Defendants' Motion for Summary
Judgment, 21.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248.  The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.) (quoting Fed. R. Civ. P. 56(e)), cert. denied, 555 U.S. 827 (2008).

## RELEVANT LAW

### 1.    *FDCPA*

"Seeking somewhat to level the playing field between debtors and debt collectors, the FDCPA prohibits debt collectors 'from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)).  "The FDCPA imposes strict liability on creditors, including liability for violations that are not knowing or intentional." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (quotation omitted).  As relevant here, Sections 1692e and 1692f generally

prohibit debt collectors from engaging in false, deceptive, misleading, unfair, or unconscionable conduct.  15 U.S.C. §§ 1692e, 1692f.  "Whether conduct violates Sections 1692e or 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'"  *Donohue*, 592 F.3d at 1030 (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007)).

Section 1692f provides in pertinent part, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Section 1692e provides that a "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The statute goes on to specify certain types of conduct that qualify as violations.  *Id*.  Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  *Id*. § 1692e(5).  Subsection (10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  *Id*. § 1692e(10).  "In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law."  *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) (citation omitted).

### 2.    *Protection of Social Security Benefits*

The crux of Plaintiff's claims is that Defendants violated the FDCPA by causing a levy to be placed upon her bank accounts without regard to whether the funds contained therein were exempt.  Underlying this theory of wrongdoing is the manner in which exempt funds, such as Social Security benefits, are protected under state and federal law.

The Anti-Attachment Provision of the Social Security Act, 42 U.S.C. § 407(a), prohibits creditors and debt collectors from using legal process to reach

Social Security benefits.[4]  *See Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415-17 (1973).  The Social Security Administration, which has the authority to interpret laws dealing with social security benefits and to promulgate rules and regulations thereunder, *see* 42 U.S.C. 405(a), has explained that the exemption in Section 407(a) may be used as an affirmative defense by a beneficiary after funds have been removed from an account pursuant to garnishment or levy.  *See* Social Security Administration, Program Operations Manual System, GN 02410.001, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0202410001 ("If a beneficiary is ordered to pay his/her benefits to someone else, or his/her benefits are taken by legal process, he/she can use section [407] as a personal defense against such actions.").

The protection provided by Section 407(a) is incorporated into Part 212 of Title 31 of the Code of Federal Regulations, a regulatory scheme enacted in 2011 for the protection of federal benefits from levy, garnishment, and other legal process. The regulations establish procedures for financial institutions when served with a garnishment order or levy against an account holder "into whose account a [protected] Federal benefit payment has been directly deposited."  31 C.F.R. § 212.1. The regulations require that a financial institution conduct an account review and follow certain procedures when served with a garnishment order or levy.  *Id.* § 212.2; § 212.3 (defining an "account review").  Pursuant to the regulations, a financial institution reviews all accounts in the name of the account holder separately.  *Id.* § 212.5(f).  "In performing account reviews for multiple accounts in the name of one account holder, a financial institution shall not trace the movement of funds between accounts by attempting to associate funds from a benefit payment deposited into one account with amounts subsequently transferred to another

___

[4] The provision states: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."  42 U.S.C. § 407(a).

account." *Id.* These federal regulations act as a complement to state laws regarding garnishment and levy practices, so long as the state laws are consistent with the federal regulations. *Id.* § 212.9(b).

California has established its own set of procedures to protect public benefits from legal process. Code of Civil Procedure section 704.080 provides that an account into which Social Security payments are directly deposited "is exempt to the extent that it consists of payments of public benefits or social security benefits" authorized by the Social Security Administration. *Miller v. Bank of America, NT & SA*, 46 Cal. 4th 630, 640 (2009) (citing Cal. Code Civ. Pro. § 704.080(c)). "Section 704.080, by providing such automatic exemption for direct deposit amounts, provides *additional* protection to Social Security payments that are directly deposited." *Kilker v. Stillman*, 233 Cal. App. 4th 320, 323 (2015) (italics in original).

Consistent with federal regulations, California tasks the financial institution that holds a deposit account with exempt funds with protecting the funds. The financial institution must provide written notice to the levying officer that the deposit account is one in which payments of social security benefits are directly deposited by the government or its agent. *Lange v. CIR Law Offices*, 2010 U.S. Dist. LEXIS 63419, 11-12 (S.D. Cal. June 22, 2010) (citing *In re Dalaimo*, 88 B.R. 268, 271 (S.D. Cal. 1988) (explaining Cal. Code Civ. Pro. § 704.080 requires financial institutions to notify levying officer  that account has exempt social security funds and put money into blocked account pending further proceedings)).

In the event exempt funds are erroneously seized, California law has established specific procedures for the return of those funds. California Code of Civil Procedure section 703.520(a) provides that "[t]he claimant may make a claim of exemption by filing with the levying officer a claim of exemption together with a copy thereof." The exemption claimant has the burden of proving entitlement to the exemption, and of tracing any exempt funds that have been transferred out of a

protected deposit account.  Cal. Code Civ. Pro. § 703.580(b); § 703.080(b).

**DISCUSSION**

*1.     Sections 1692e(5) and 1692f Claims Against MCT and Singer*

Defendants argue that their actions to collect on a valid state court judgment via a lawful means did not violate the FDCPA.  Plaintiff does not challenge the validity of the state court judgment against her or the general lawfulness of a levy in aid of execution.  Plaintiff also does not dispute that procedural protections exist and were available to her, nor can she, as she availed herself successfully of California's procedure for claiming an exemption and securing the return of the levied funds.  Instead, Plaintiff argues that Defendants knew her bank account contained only exempt Social Security benefits, therefore Defendants' effort to collect on the judgment via a bank levy was prohibited as "an action that cannot legally be taken" under Section 1692e(5) and was unfair or unconscionable under Section 1692f.

As noted above, "liability under Section 1692e is an issue of law." *Gonzales*, 660 F.3d at 1061 n.3.  Thus, the Court must determine whether Defendants' act of authorizing the San Diego County Sheriff to serve a Notice of Levy on Wells Fargo, with instructions to levy "all sums on deposit" in Plaintiff's accounts, constitutes a "threat to take any action that cannot legally be taken" such that the action was likely "to deceive or mislead a hypothetical least sophisticated debtor." *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) (quotation omitted).

As an initial matter, Plaintiff admitted during deposition that Defendants never threatened to seize her Social Security benefits.  *See* Plaintiff's Depo., 67:1-6.  Moreover, Defendants' authorization of the bank levy was not a "threat," but an action – one which Defendants had a legal right to pursue even if it ultimately was unsuccessful.  *See Heintz*, 514 U.S. at 296 (holding that the action of filing a lawsuit, even if it "turns out ultimately to be unsuccessful," is not "by itself" a threat of an "action that cannot legally be taken.").  However, even if a hypothetical "least sophisticated debtor" would have viewed the bank levy as a "threat," he or she

would not have considered the levy an "action that cannot be legally taken" because notice of the legal basis for the action was provided.

Plaintiff received a Notice of Levy signed by the Sheriff's authorized agent, informing her that the "property to be levied upon" included:

> Any and all deposit accounts, safe deposit boxes, monies, credits, rents, debts, effects due or owing the judgment debtor in the possession or under the control of the person, business, firm, association, partnership, corporation or financial institution listed under garnishee. This levy is made in accordance with SEC.700.140 or 700.150 CCP. (Wells Fargo Bank 930 7/24)

*See* Plaintiff's Depo., Ex. 3. Plaintiff also received a copy of the writ of execution, a list of assets exempt from levy on a judgment, and a list of current dollar amounts of those exemptions.[5] *Id*. Included with the list of exempt assets was the following instruction:

> If you believe the assets that are being levied on are exempt, file a claim of exemption form, which you can get from the levying officer.

*Id*. The Notice of Levy and attached documents originated from the Sheriff's Office, were served by the Sheriff's authorized agent, cited relevant California statutes, and provided the necessary pertinent information regarding California's levy procedure, how to determine if any property is exempt, and what to do in the event of an exemption. Thus, a hypothetical "least sophisticated debtor" would not have been confused, misled, or deceived into thinking that Defendants were threatening to take an "action that cannot be legally taken."

---

[5] Despite an apparent contradiction in the record, the Court finds – and the parties do not appear to dispute – that Plaintiff personally received the Notice of Levy and lists of exemptions and exemption amounts. When asked by defense counsel during deposition, Plaintiff could not recall receiving any documents from the Sheriff's Office. *See* Plaintiff's Depo. at 80:4-5. However, later during the deposition Plaintiff's counsel tendered three documents to defense counsel, including **"everything that Ms. Gates provided to me about the levy**, as well as the letters we sent to the Sheriff's Department with regard to the claim of exemption." *Id.* at 82:17-20 (emphasis added). The documents include the Notice of Levy signed by the Sheriff's authorized agent and addressed to Plaintiff, the writ of execution, the lists of exempt assets and amounts, and the forms submitted by Plaintiff in relation to her claim of exemption. *Id*., Ex. 3. Based on Plaintiff's counsel's statement that Plaintiff provided the documents, the Court finds that Plaintiff in fact received the Notice of Levy and attached documentation.

Plaintiff argues that the illegal action at issue here is not the levy itself, but rather levying accounts with the knowledge that the accounts contained only exempt funds.  Because it is a strict liability statute, Defendants' knowledge is irrelevant to whether they violated Section 1692e(5).  *McCollough*, 637 F.3d at 952.  Regardless, Plaintiff relies on two pieces of evidence to argue that Defendants knew at the time they authorized the bank levy that Plaintiff's accounts contained only exempt Social Security benefits.  First, Plaintiff testified that she informed MCT's representative during a phone call that the only income she receives comes from Social Security.  *See* Plaintiff's Depo., 46:18-21.  Second, the credit union provided client account notes to MCT after assigning the debt for collection that indicated Plaintiff is on a "fixed income."  *See* Censullo Depo., 94-95.

Neither Plaintiff's statement to the MCT representative nor the credit union's notes regarding Plaintiff's "fixed income" establish that Defendants knew there were no non-exempt funds in Plaintiff's bank accounts.  Furthermore, Defendants could not have had knowledge of something that was simply not true.  Plaintiff's banking statements demonstrate without dispute that, in fact, not "all sums on deposit" in Plaintiff's accounts were exempt funds.  *See* Defendants' Exhibits in Support of Motion for Summary Judgment, Exs. C and D.  Plaintiff deposited non-exempt funds from other sources into her checking account and those funds then became available for recurring transfer to her savings account.  *Id.*  In the months prior to service of the levy, Plaintiff deposited hundreds of dollars into her accounts from sources other than the Social Security administration.[6]  *See id.*, Ex. D. Plaintiff's testimony that her Social Security benefits are her only source of funds is contradicted by the record and therefore the Court is not obligated to "adopt that version of the facts for purposes of ruling on a motion for summary judgment."

---

[6] Plaintiff also conceded at the end of her deposition that her son gives her "money for necessities."  *See* Plaintiff's Depo., 96:1-4.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).

There is no evidence in the record to suggest that Defendants failed to follow the appropriate procedure under California law for authorizing the levy on Plaintiff's accounts at Wells Fargo. There is no evidence that Defendants authorized the levy with the knowledge that Plaintiff's bank accounts contained *only* exempt funds. There is no evidence that Defendants levied any funds from Plaintiff's protected deposit account. The $76.76 in levied funds were withdrawn from Plaintiff's savings account, and there is no evidence that any direct deposits of Social Security payments were made electronically to Plaintiff's savings accounts by a benefit agency. Thus, Plaintiff's savings account was not protected by an automatic exemption under state or federal law.[7] To the extent the $76.76 consisted of Social Security benefits, the funds remained subject to protection under Section 407(a). As such, Plaintiff was entitled to claim exemption from levy, which she did. *Kilker*, 233 Cal. App. 4th at 323 ("If [funds] are not directly deposited, the judgment debtor may claim exemption from levy but must prove such funds were Social Security payments."). If challenged, Plaintiff would have had the burden of proving the funds were Social Security payments. *Id.* at 324. However, Defendants did not challenge the claim of exemption and the levying officer returned the $76.76 to Plaintiff.

In sum, Defendants did not threaten to take "an action which cannot legally be

---

[7] Only electronic deposits made by a benefit agency, such as the Social Security Administration, are automatically protected by federal financial regulations from levy or garnishment. *See* 31 C.F.R. § 212.3 and § 212.5(b) and (c). Because no payments were electronically deposited by a benefit agency into Plaintiff's savings account during the specified look back period, Wells Fargo was not required to follow the procedures for protecting the funds in Plaintiff's savings account. *See id.* § 212.5(b) (where no benefit payment is deposited during the look back period, the financial institution is not required to follow the procedures in § 212.6); § 212.6 (the provisions of § 212.6 apply only if an account review shows that "a benefit agency deposited a benefit payment into an account during the look back period."). Likewise, California law provides automatic protection for only those accounts "in which payments of public benefits or social security benefits are directly deposited by the government or its agent." Cal. Code Civ. Pro. § 704.080(a)(1).

taken." Plaintiff's protected deposit account was never levied. Plaintiff's savings account was levied, but she claimed exemption and the funds were returned. The evidence shows that all parties involved complied with state and federal law and the system worked as it was supposed to protect Plaintiff's exempt assets. Therefore, the Court finds as a matter of law that Defendants did not violate Section 1692e(5) of the FDCPA.

Nor could a reasonable jury find that Defendants' actions were unfair or unconscionable under Section 1692f. Plaintiff makes much of the fact that Defendants did not investigate the source of the funds in her bank accounts prior to authorizing the levy. Plaintiff asserts that "[a]t no time have any of the defendants requested from me the source of the funds in my bank accounts." *See* Plaintiff's Decl'n in Support of Opposition to Defendants' Motion for Summary Judgment at ¶ 9. She argues that this failure to investigate is in part what renders Defendants' actions in this case unfair or unconscionable.

Plaintiff cites several district court cases from other circuits to support her argument, including *Bray v. Cadle Co.*, 2010 U.S. Dist. LEXIS 109470 (S.D. Tex. Oct. 12, 2010), and *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043 (S.D. Iowa 2007). However, both cases are factually distinguishable, originate from jurisdictions with contrasting state law garnishment procedures, and rely on questionable legal analysis. The bottom line here is that, right or wrong, a judgment creditor has no duty under either California or federal law to investigate, much less confirm, that a judgment debtor's bank accounts contain only non-exempt funds prior to authorizing a levy on those accounts. It is unreasonable to conclude that a judgment creditor's failure to conduct a pre-levy debtor's exam, when there is no legal obligation or requirement to do so, constitutes unfair or unconscionable action. On this record, no reasonable jury could conclude that Defendants' conduct in authorizing a levy to be placed on Plaintiff's accounts constituted an unfair or unconscionable means of collecting a debt.

1    Accordingly, the Court will grant summary judgment in favor of Defendants
2    as to Plaintiff's Sections 1692e(5) and 1692f claims.
3    **2.    *Section 1692e(10) Claim Against MCT***
4        Plaintiff asserts that an MCT representative stated during a telephone call that
5    Plaintiff's Social Security income was not exempt from the levy on her bank
6    accounts because she had transferred the funds from her checking account into her
7    savings account.  Plaintiff argues that this is a false statement and constitutes a
8    violation of section 1692e(10).  Defendants dispute whether an MCT representative
9    actually made any such statement, but argue that MCT is nevertheless entitled to
10   summary judgment because the statement is not false or misleading.
11        Section 1692e(10) has been referred to as a "catchall" provision.  *Gonzales*,
12   660 F.3d at 1062.  As noted above, it prohibits "[t]he use of any false representation
13   or deceptive means to collect or attempt to collect any debt or to obtain information
14   concerning a consumer."  15 U.S.C. § 1692e(10).  The false or misleading
15   representation must be "material" in order for its utterance to violate the FDCPA.
16   *Donohue*, 592 F.3d at 1033.  The Ninth Circuit has explained that "[i]n assessing
17   FDCPA liability, we are not concerned with mere technical falsehoods that mislead
18   no one, but instead with genuinely misleading statements that may frustrate a
19   consumer's ability to intelligently choose his or her response."  *Id.* at 1034.  "The
20   purpose of the FDCPA, 'to provide information that helps consumers to choose
21   intelligently,' would not be furthered by creating liability as to immaterial
22   information because 'by definition immaterial information neither contributes to that
23   objective (if the statement is correct) nor undermines it (if the statement is
24   incorrect).'"  *Id*. at 1033 (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755,
25   757-58 (7th Cir. 2009)).
26        The subject phone call between Plaintiff and the MCT representative took
27   place on July 26, 2013, two days after Wells Fargo was served with the Notice of
28   Levy and withdrew funds from Plaintiff's savings account.  *See* Kline Depo., Ex. 2.

1   What exactly was said during the call, and by whom, is disputed.  When queried

2   during deposition, Plaintiff described the phone call as follows:

3       Q:   And so you called the MCT Group, and what did you tell them?

4       A:   I said I guess it was Mr. Clark [MCT representative's pseudonym]
            that I spoke to? Mr. Clark, is that his name? I said, You've made a

5           mistake. And he says, Why? And I said, Well, you've taken money
            that is protected by the federal government. And he said, I haven't

6           made any mistake. He said, It's not protected by the federal
            government. And he said the same thing the bank said, the same

7           thing that the bank said, that once the money is transferred from
            savings to checking it's no – the source is no longer – there's a

8           question on the source. It's no longer considered Social Security.

9           ( . . .)

10          He said, We're not guilty we didn't do anything wrong. He knew
            about what happened and the amount and everything, and they

11          didn't do anything wrong. He didn't do anything wrong, he said. I
            didn't have to tell him anything.

12

13   *See* Plaintiff's Depo., 32:13-25; 34:4-8.  Plaintiff further testified that the MCT

14   representative "said that when the money is transferred [from checking to savings] it

15   loses it's [sic] original – it no longer is Social Security, it's just money." *See id.*,

16   94:17-19.  MCT's representative remembers the conversation differently:

17      Q:   Okay. And this call came after both had been taken, against her
            home and her bank account?

18      A:   Yes.

19          ( . . . )

20          Mrs . Gates was in complete control of the conversation , she was
            very hyperactive and it was really not a conversation, but her just

21          kind of – almost a stream of consciousness of different things that
            she was saying and I listened.

22

23      Q:   Okay. And did she hang up or did you guys have a chance to speak
            after she had a stream of consciousness, as you put it?

24      A:   As I recall, we just concluded the conversation and I said okay and

25          that was the end of it.

26      Q:   Was there any discussion about which funds are exempt and which
            funds are not exempt?

27

28      A:   I didn't have any discussion with her about her funds.

*See* Kline Depo., 43:2-4; 43:16-44:5.  The July 26, 2013 phone call was not recorded by either Plaintiff or MCT.

Based on the disputed recollections of the conversation, the Court cannot determine what, if anything, the MCT representative said to Plaintiff during the call, much less whether any representations were false, misleading, or material.  Despite this, Defendants urge the Court to find as a matter of law that MCT did not violate Section 1692e(10).  Defendants essentially argue that even if Plaintiff's recollection of the conversation is accurate, her claim fails because the statements she attributes to the MCT representative were not false.  However, that is not the case.  If the MCT representative told Plaintiff that after she transferred Social Security benefits from her checking account into her savings account that "it is no longer Social Security," as Plaintiff claims, such a representation is not necessarily true and could mislead a hypothetical "least sophisticated debtor."

Pursuant to California law, "a fund that is exempt remains exempt to the extent that it can be traced into deposit accounts or in the form of cash or its equivalent."  Cal. Code Civ. Pro. § 703.080(a).  By stating or insinuating otherwise, a debt collector could confuse or mislead a "least sophisticated debtor" into believing that Social Security benefits are no longer exempt from legal process under state and federal law once levied from an account that is not automatically protected.  This could cause the debtor to not claim an exemption, which in turn would result in the false or misleading representation assisting in the collection of the debt.  That such a scenario did not occur here is of no moment, since the Court must consider things from the perspective of the hypothetical "least sophisticated debtor."

Having reviewed the conflicting evidence presented by the parties, the Court cannot conclude as a matter of law that MCT did not violate Section 1692e(10) of the FDCPA.  It will be for the trier of fact to do so.  Accordingly, the Court must deny both parties' motions for summary judgment as to this claim.

1    *3.    Rosenthal Act Claim*

2        The Rosenthal Act requires compliance with the FDCPA, and a debt collector

3    that violates the FDCPA also violates the Rosenthal Act.  *See* Cal. Civ. Code §

4    1788.17; *Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1107, 1118 (C.D. Cal.

5    2005).  Because there exists triable factual issues as to Plaintiff's Section 1692e(10)

6    claim, the Court also finds that a triable issue exists regarding MCT's liability under

7    Section 1788.17 of the Rosenthal Act.  Accordingly, the Court will deny both

8    parties' motions for summary judgment as to Plaintiff's Rosenthal Act claim against

9    MCT.

10                                    CONCLUSION

11        Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN**

12   **PART** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion

13   for partial summary judgment.  The Court dismisses Plaintiff's FDCPA Sections

14   1692e(5) and 1692f claims against Defendants with prejudice.  The Court dismisses

15   Plaintiff's Rosenthal Act claim against Defendant Singer with prejudice.  The Clerk

16   of Court is instructed to terminate this action as to Defendant Singer.

17        Plaintiff's FDCPA Section 1692e(10) and Rosenthal Act claims against

18   Defendant MCT will proceed to trial.

19        **IT IS SO ORDERED.**

20   DATED:  March 13, 2015

21

22                                              Hon. Michael M. Anello
                                                United States District Judge

23

24

25

26

27

28